IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. )<br>DARRYL SIMMS, )<br>                                   )<br>       Petitioner, )<br>                                   )<br>   v. )<br>                                   )<br>STEPHEN B. WRIGHT, Warden, )<br>Hill Correctional Center, )<br>                                   )<br>       Respondent. ) | No. 07 C 28<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Petitioner Darryl Simms has brought a pro se petition for habeas corpus relief pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, seeking to overturn his state conviction for murder, aggravated criminal sexual assault, criminal sexual assault, home invasion, and residential burglary. Respondent Stephen B. Wright, Warden of Hill Correctional Center, has filed a motion to dismiss the petition as untimely. For the reasons set forth below, respondent's motion is granted.

**FACTS**

On October 28, 1985, following a bench trial in the Circuit Court of DuPage County, petitioner was convicted of murder, aggravated criminal sexual assault, criminal sexual assault, home invasion, and residential burglary.[1] The State sought to impose the death penalty, and

---

[1] The first Illinois Supreme Court opinion in this case states that petitioner was convicted of nine counts of murder, six counts of aggravated criminal sexual assault, and five counts of residential burglary. People v. Simms, 520 N.E.2d 308, 311 (Ill.1988). The second opinion states that he was convicted of murder, aggravated criminal sexual assault, criminal sexual assault, armed robbery, and home invasion. People v. Simms, 572 N.E. 947, 949 (Ill. 1991).

(continued...)

petitioner waived his right to be sentenced by a jury. The trial court found petitioner eligible for the death penalty because he was more than eighteen years old at the time of the offense and had multiple felony-murder convictions. After the trial court determined that there were no mitigating factors present sufficient to prevent the imposition of the death penalty, it sentenced petitioner to death.

Petitioner appealed his conviction and sentence to the Illinois Supreme Court. On January 25, 1988, the Illinois Supreme Court affirmed his convictions but reversed his death sentence, finding that the State's introduction of victim impact statements during the sentencing hearing was in error pursuant to Booth v. Maryland, 482 U.S. 496 (1987) (overruled by Payne v. Tennessee, 501 U.S. 808 (1991)), and it remanded the case to the trial court for resentencing. On April 5, 1988, the Illinois Supreme Court denied the State's petition for rehearing.

On remand, a jury found petitioner eligible for the death penalty because he was over the age of eighteen at the time of the offense and committed the murder in the course of another felony. The jury also determined that there were no mitigating factors sufficient to preclude sentencing petitioner to death and imposed the death penalty.

Petitioner again appealed his sentence to the Illinois Supreme Court. On April 18, 1991, the Illinois Supreme Court again reversed his sentence, finding that the sentencing jury had been improperly instructed that petitioner was eligible for the death penalty if the State established beyond a reasonable doubt that petitioner committed the murder during a residential burglary.

---

[1](...continued)
Petitioner's own petition states that he was convicted of nine counts of murder, seven counts of aggravated criminal sexual assault, one count of criminal sexual assault, one count of armed robbery, one count of home invasion, and five counts of residential burglary.

The instruction was erroneous because residential burglary is not a felony that renders a defendant eligible for the death penalty. The Illinois Supreme Court again remanded the case for resentencing and denied a petition for rehearing on June 3, 1991.

At petitioner's third sentencing hearing, a jury again found petitioner eligible for the death penalty. After hearing evidence in aggravation and mitigation, the jury imposed the death penalty. Once again, petitioner appealed the sentence to the Illinois Supreme Court, which affirmed the death sentence on November 22, 1995. Petitioner petitioned the Supreme Court of the United States for a writ of certiorari. The Supreme Court denied the petition on June 24, 1996.

On November 14, 1995 (eight days before the Illinois Supreme Court affirmed petitioner's death sentence), petitioner filed a pro se petition for post-conviction relief in the Circuit Court of DuPage County. On May 21, 1997, petitioner, assisted by counsel, filed an amended petition for post-conviction and post-judgment relief. On August 12, 1998, the trial court dismissed petitioner's post-conviction petition, which included three claims that the State knowingly introduced perjured testimony during petitioner's third sentencing hearing.

Petitioner appealed the trial court's ruling to the Illinois Supreme Court. On August 10, 2000, the Illinois Supreme Court reversed the trial court on petitioner's three perjury claims and remanded the case with instructions to hold an evidentiary hearing on those claims. The Court affirmed the trial court's dismissal of petitioner's other claims.

On January 10, 2003, former Illinois Governor George Ryan commuted petitioner's death sentence to a term of life imprisonment without the possibility of parole.

On June 22, 2004, petitioner withdrew his three perjury claims. In his withdrawal notice, petitioner indicated his awareness that the trial court would no longer hold the evidentiary hearing on those claims ordered by the Illinois Supreme Court. Petitioner stated that he was "withdrawing these claims freely and voluntarily, and after having consulted with post-conviction counsel." On July 7, 2004, the trial court entered an order stating that petitioner's three remaining claims were withdrawn and that no other claims remained pending in the court.

On July 1, 2005, petitioner filed[2] a complaint for state habeas corpus relief in the Circuit Court of Randolph County. On September 1, 2005, the trial court dismissed petitioner's complaint. Petitioner appealed the judgment to the Illinois Appellate Court, Fifth District, which affirmed the trial court's judgment on June 5, 2006. On July 20, 2006, petitioner filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court. Petitioner's PLA was denied on November 29, 2006.

On December 7, 2006, petitioner filed the instant petition for writ of habeas corpus. Petitioner has exhausted his state court remedies. The State argues that the petition should be dismissed as untimely.

## DISCUSSION

AEDPA imposes a one-year statute of limitations on petitions for habeas corpus relief filed under 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitation period shall run from the latest of:

---

[2] Petitioner filed his complaint by depositing it in the prison mailing system at Menard Correctional Center. In Illinois, the verified date on which a prisoner mails a document counts as the proper date of filing. Jones v. Bertrand, 171 F.3d 499, 500 (7th Cir. 1999).

> (a) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (b) the date on which a State-created impediment to filing that was either unconstitutional or in violation of the laws of the United States was removed;
> (c) the date on which a new constitutional right was recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (d) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner does not allege a State-created impediment to filing, a newly recognized constitutional right, or a discovery of a factual predicate of a claim. The applicable date for purposes of evaluating defendant's motion, therefore, is the date on which petitioner's conviction became final. In the instant case, the applicable date is June 24, 1996, the date on which the United States Supreme Court denied certiorari.

Under § 2244(d)(2), AEDPA's one-year period of limitation is tolled while a properly filed application for post-conviction relief is pending. Wilson v. Battles, 302 F.3d 745, 747 (7th Cir. 2002). Petitioner filed a post-conviction petition on November 14, 1995. A post-conviction petition remains "pending" until the completion of the state collateral review process. Carey v. Saffold, 536 U.S. 214, 220 (2002). In the instant case, the review of post-conviction petition became final on July 7, 2004, the date on which the trial court granted petitioner's motion to withdraw his three remaining post-conviction claims. Petitioner was therefore required to file his petition for federal habeas corpus relief by July 7, 2005. Fed. R. Civ. P. 6(a); see also United States v. Marcello, 212 F.3d 1005, 1009-10 (7th Cir. 2000) (adopting the "anniversary method" to calculate the filing date for § 2255 petitions).

On July 1, 2005, petitioner filed his complaint for state habeas corpus relief, which tolled the one-year statute of limitations. From July 8, 2004, the date on which the statute of

5

limitations began to run, until July 1, 2005, the date on which petitioner filed his complaint, 358 days ran on petitioner's one-year limitation period.

The one-year period remained tolled from July 1, 2005 until November 29, 2006, when the Illinois Supreme Court denied his PLA from the Illinois Appellate Court's judgment affirming the dismissal of petitioner's state habeas corpus complaint. The one-year clock began running again on November 30, 2006.[3] Petitioner filed his federal habeas corpus petition on December 7, 2006, eight days later. Adding those eight days to the 358 days that elapsed previously, the federal habeas corpus petition was filed 366 days after the conviction became final–one day too late.

Petitioner claims that he is entitled to equitable tolling of the one-year period from "early June" 2005 to July 1, 2005. According to petitioner, he originally filed his state habeas corpus petition in early June of 2005, but that petition was rejected because he did not submit a copy of his prison trust fund account as required by local rules. The trial court informed petitioner on

---

[3]Petitioner claims that the 365-day clock should have stopped running from July 7, 2004, to August 7, 2004, because he had thirty days in which to move to reinstate his state petition after the state trial court granted his request to withdraw his three remaining post-conviction claims. Plaintiff, however, did not move to reinstate his application during that thirty-day period. "When Congress intended to exclude from the limitations period time during a pleading could have been filed, it did so explicitly." Gutierrez v. Schomig, 233 F.3d 490, 492 (7th Cir. 2000). Congress did not exclude the thirty-day period referenced by petitioner from the one-year statute of limitations at issue. The thirty days following July 7, 2004, are therefore properly counted in the one-year period.

Petitioner also claims the one-year period should have been tolled from November 29, 2006, to January 4, 2007, because he had twenty-one days to file a petition for rehearing after the Illinois Supreme Court denied his PLA. The Illinois Supreme Court Rules, however, do not provide for the filing of petitions for rehearing of an order denying a PLA, and the Clerk of the Illinois Supreme Court informed petitioner of that rule. Further, petitioner never attempted to appeal the denial of his PLA, as a motion for reconsideration or otherwise. Once again, because petitioner had no motion pending, the one-year time period was not tolled.

June 30, 2005, that his petition had been rejected. According to petitioner, the time it took the trial court to inform him of that rejection is an "extraordinary circumstance" warranting equitable tolling.

To be entitled to equitable tolling, petitioner must establish that: (1) he has been pursuing his rights diligently; and (2) extraordinary circumstances beyond his control stood in the way of the timely filing of his petition. <u>Modrowski v. Mote</u>, 322 F.3d 965, 967 (7th Cir. 2003). As respondent correctly asserts, petitioner did not pursue his rights diligently. Instead, petitioner waited almost a full year after the state trial court granted his request to withdraw his post-conviction claims to begin pursuing his state habeas corpus petition. Additionally, there were no extraordinary circumstances that prevented petitioner from filing his petition in a timely manner. Although petitioner is correct that the state trial court did not notify him that his petition had been rejected for approximately three weeks, such a delay is not "extraordinary" and does not warrant equitable tolling of the one-year statutory period.

Because the instant petition was filed one day late, and because petitioner is not entitled to equitable tolling, the court must grant the State's motion to dismiss the petition as barred by the statute of limitations.

## CONCLUSION

For the reasons discussed above, the court grants respondent's motion to dismiss the petition as untimely.

**ENTER:** July 13, 2007

_____
**Robert W. Gettleman**
**United States District Judge**

7